# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

## Civil Division

NILDA ROQUE and EVELYN HERNANDEZ, as Co-Administratrixes of the Estate of LUIS HERNANDEZ, Deceased and NILDA ROQUE and EVELYN HERNANDEZ on behalf of all Wrongful Death Beneficiaries of LUIS HERNANDEZ, Deceased;

Plaintiffs,

vs.

MUNICIPALITY OF MONROEVILLE, MONROEVILLE POLICE DEPARTMENT, CHIEF KENNETH D. COLE, CORPORAL CHAD HOFFNER, SERGEANT JAMES MACDONALD, OFFICER BRIAN FRANK and OFFICER KEVIN PERSICHETTI,

Defendants.

No.: GD-24-9360

PLAINTIFFS' COMPLAINT

Filed on behalf of: Plaintiffs, Nilda Roque and Evelyn Hernandez

Counsel of Record for this Party:

ROBERT F. DALEY, ESQUIRE
Pa. I.D. No.: 81992

KIRSTIN F. KENNEDY, ESQUIRE
Pa. I.D. No.: 330458

ADRIANA FRONTINO, ESQUIRE
Pa. I.D. No.: 331896

ROBERT PEIRCE & ASSOCIATES, P.C.
Firm I.D. No.: 839
Suite 125
707 Grant Street
Pittsburgh, PA 15219
(412) 281-7229

Exhibit "A"

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

### Civil Division

NILDA ROQUE and EVELYN
HERNANDEZ, as Co-Administratrixes of
the Estate of LUIS HERNANDEZ, Deceased
and NILDA ROQUE and EVELYN
HERNANDEZ on behalf of all Wrongful
Death Beneficiaries of LUIS HERNANDEZ,
Deceased;

          Plaintiffs,

vs.

MUNICIPALITY OF MONROEVILLE,
MONROEVILLE POLICE
DEPARTMENT, CHIEF KENNETH D.
COLE, CORPORAL CHAD HOFFNER,
SERGEANT JAMES MACDONALD,
OFFICER BRIAN FRANK and OFFICER
KEVIN PERSICHETTI,

          Defendants.

No.:

### <u>NOTICE TO DEFEND</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice were served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

Lawyer Referral Service
Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 261-5555

YOU MUST RESPOND TO THIS COMPLAINT WITHIN TWENTY (20) DAYS OR A JUDGMENT FOR THE AMOUNT CLAIMED MAY BE ENTERED AGAINST YOU BEFORE THE HEARING. IF YOU DO NOT APPEAR FOR THE HEARING, THE CASE MAY BE HEARD IMMEDIATELY BEFORE A JUDGE. THERE IS NO RIGHT TO A TRIAL DE NOVO ON APPEAL FROM A DECISION ENTERED BY A JUDGE.

2

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

## Civil Division

NILDA ROQUE and EVELYN HERNANDEZ, as Co-Administratrixes of the Estate of LUIS HERNANDEZ, Deceased and NILDA ROQUE and EVELYN HERNANDEZ on behalf of all Wrongful Death Beneficiaries of LUIS HERNANDEZ, Deceased;

          Plaintiffs,

vs.

MUNICIPALITY OF MONROEVILLE, MONROEVILLE POLICE DEPARTMENT, CHIEF KENNETH D. COLE, CORPORAL CHAD HOFFNER, SERGEANT JAMES MACDONALD, OFFICER BRIAN FRANK and OFFICER KEVIN PERSICHETTI,

          Defendants.

No.:

## PLAINTIFFS' COMPLAINT

AND NOW, come the Plaintiffs, Nilda Roque and Evelyn Hernandez, as Co-Administratrixes of the Estate of Luis Hernandez, Deceased, by and through their undersigned counsel, Robert F. Daley, Esquire; Kirstin F. Kennedy, Esquire; Adriana Frontino, Esquire; and the law firm of Robert Peirce & Associates, P.C. and claim damages against the Defendants Municipality of Monroeville; Monroeville Police Department; Chief Kenneth D. Cole; Corporal Chad Hoffner; Sergeant James MacDonald; Officer Brian Frank; and Officer Kevin Persichetti and aver as follows in support thereof:

1.    Plaintiff Nilda Roque is an adult individual with an address of 2117 Park Hill Drive Apartment C, Pittsburgh, Allegheny County, Pennsylvania, 15221.

1

2.    Plaintiff Evelyn Hernandez is an adult individual with an address of 2117 Park Hill Drive Apartment C, Pittsburgh, Allegheny County, Pennsylvania, 15221.

3.    Nilda Roque is the mother of Plaintiffs' Decedent Luis Hernandez.

4.    Evelyn Hernandez is the aunt of Plaintiffs' Decedent Luis Hernandez.

5.    Luis Hernandez died on August 26, 2022.

6.    Nilda Roque and Evelyn Hernandez were appointed co-Administratrixes of the Estate of Luis Hernandez on December 20, 2023 by the Register of Wills of Allegheny County.

7.    As co-Administratrixes of the Estate of Luis Hernandez, Nilda Roque and Evelyn Hernandez brings this action under 42 Pa. Cons. Stat. § 8302 (Survival) on behalf of the Estate of Luis Hernandez.

8.    As the "personal representative" of the Estate of Luis Hernandez Jr., Nilda Roque and Evelyn Hernandez bring this action 42 Pa. Cons. Stat. § 8301 (Wrongful Death) and Pa. R. Civ. P. 2202(a) on their own behalf and on behalf of all wrongful death beneficiaries.

9.    The names and addresses of all persons legally entitled to recover damages from the wrongful death of Luis Hernandez, and their relationship to him, are as follows:

| Name | Address | Relationship |
|------|---------|--------------|
| Nilda Roque | 2117 Park Hill Drive Apartment C Pittsburgh, PA 15221 | Mother |
| Laila Hernandez | 921 Wagner Ave Philadelphia, PA 19141 | Child |
| Luis Hernandez Jr. | 2117 Park Hill Drive Apartment C Pittsburgh, PA 15221 | Child |

2

| Lamiah Hernandez | 2117 Park Hill Drive | Child |
| | Apartment C | |
| | Pittsburgh, PA 15221 | |

10.    Defendant Municipality of Monroeville is a political subdivision of the Commonwealth of Pennsylvania and a Pennsylvania Municipal Corporation.

11.    The Municipality of Monroeville's business address is 2700 Monroeville Boulevard, Monroeville, Allegheny County, Pennsylvania, 15146.

12.    The Municipality of Monroeville operates the Monroeville Police Department and as such all agents, servants, workmen, and employees of Monroeville Police Department are employees or agents of the Municipality of Monroeville.

13.    Defendant Monroeville Police Department is an agency of Defendant Municipality of Monroeville.

14.    The Monroeville Police Department's business address is 2700 Monroeville Boulevard, Monroeville, Allegheny County, Pennsylvania, 15146.

15.    At all relevant times, Chief Kenneth D. Cole (hereinafter referred to as "Defendant Cole") was in charge of and responsible for the Monroeville Police Department and its policies and was acting within the scope of his employment as a supervisor and police officer.

16.    Upon information and belief, Defendant Cole maintains a business address at 2700 Monroeville Boulevard, Monroeville, PA 15146.

17.    At all relevant times, Corporal Chad Hoffner (hereinafter referred to as "Defendant Hoffner") was an agent, servant, workmen, and employee of Monroeville Police Department, and was acting within the scope of his employment as a supervisor and police officer.

18.    Upon information and belief, Defendant Hoffner maintains a business address at 2700 Monroeville Boulevard, Monroeville, PA 15146.

3

19.     At all relevant times, Sergeant James MacDonald (hereinafter referred to as "Defendant MacDonald") was an agent, servant, workmen, and employee of Monroeville Police Department, and was acting within the scope of his employment as supervisor and police officer.

20.     Upon information and belief, Defendant MacDonald maintains a business address at 2700 Monroeville Boulevard, Monroeville, PA 15146.

21.     At all relevant times, Officer Brian Frank (hereinafter referred to as "Defendant Frank") was an agent, servant, workmen, and employee of Monroeville Police Department, and was acting within the scope of his employment as a police officer.

22.     Upon information and belief, Defendant Frank maintains a business address at 2700 Monroeville Boulevard, Monroeville, PA 15146.

23.     At all relevant times, Officer Kevin Persichetti (hereinafter referred to as "Defendant Persichetti") was an agent, servant, workmen, and employee of Monroeville Police Department, and was acting within the scope of his employment as a police officer.

24.     Upon information and belief, Defendant Persichetti maintains a business address at 2700 Monroeville Boulevard, Monroeville, PA 15146.

25.     Defendants Hoffner, MacDonald, Frank and Persichetti may, at times, be referred to collectively as "Police Officer Defendants." However, each may still be referred to individually.

26.     The Municipality of Monroeville and the Monroeville Police Department will hereinafter be collectively referred to as "Monroeville" or "Defendant Monroeville."

27.     At all times material and relevant hereto, Defendant Monroeville acted by and through its agents and employees who were then and there acting within the scope of their employment.

4

28.     Defendant Monroeville was responsible for the polices, practices, supervision, implementation, and conduct of all matters pertaining to the operation of the Monroeville Police Department and was responsible for the appointment, training, supervision, and conduct of all Monroeville Police Department personnel. In addition, at all relevant times, Monroeville was responsible for enforcing the rules and operating procedures of the Monroeville Police Department and for ensuring that personnel employed by it obey the Constitution, the laws of the United States, and the laws of the Commonwealth of Pennsylvania.

## FACTS COMMON TO ALL CAUSES OF ACTION

### AN AVERAGE COMMUTE HOME TURNS FATAL
### WHEN IT IS INTERRUPTED BY THE DEFENDANT POLICE OFFICERS'
### UNLAWFUL HIGH-SPEED PURSUIT

29.     The facts relevant to the causes of action stated herein were known, or in the exercise of due diligence, should have been known to all Defendants during all times relevant hereto.

30.     No other actions have been commenced regarding the injuries Mr. Hernandez sustained due to Defendants' actions herein.

31.     On the evening of August 26, 2022, at roughly 8:00 p.m. Mr. Luis Hernandez, a single father of three children ranging in age from ten to fifteen at the time of the incident, was crossing the intersection of William Penn Highway and Graham Boulevard on his mini-bike while returning home from work.

32.     While in the intersection, Luis Hernandez was struck by a vehicle driven by Jack Sherwood, who was being pursued by Monroeville in a high-speed police chase.

33.     Mr. Hernandez was taken to UPMC Mercy Hospital, where he was pronounced dead at 11:53 p.m. on August 26, 2022.

5

34.     The cause of death on Mr. Hernandez's Death Certificate is identified as blunt force trauma to the head, trunk, and extremities.

35.     Within an instant, with no time to prepare nor opportunity to say goodbye, Luis Hernandez lost his life and the Hernandez family lost its guiding paternal figure, whom they all relied upon, as a the direct result of a needless, high-speed police pursuit improperly conducted by the Police Officer Defendants for the purpose of apprehending an individual who was already known to police with outstanding warrants.

36.     The Police Officer Defendants' improper and negligent high-speed pursuit of the suspect directly caused the fatal collision between and the vehicle of the fleeing suspect and Luis Hernandez.

## THE POLICE OFFICER DEFENDANTS UNLAWFULLY PURSUE JACK SHERWOOD AT EXCESSIVE SPEEDS

37.     As of August 24, 2022, Jack Sherwood had three outstanding warrants, one for fleeing police and two for assault.

38.     On August 26, 2022, at roughly 7:53 p.m., Defendant Persichetti advised Monroeville Dispatch via radio that a blue Ford Escape had just triggered his license plate reader alert and asked if the alert was current and had triggered anywhere else.

39.     Monroeville Dispatch advised that it was current and it had triggered at the intersection of Route 22 East at Pace Drive.

40.     Defendant Hoffner then advised Monroeville Dispatch that he was close to that location and he had begun to follow the vehicle.

41.     Monroeville Dispatch advised Defendant Hoffner that the vehicle was being operated by Jack Sherwood who had warrants out for his arrest.

42.     Another officer, who is believed to be Defendant MacDonald based on records, advised Defendant Hoffner via radio that Sherwood had fled another traffic stop just a few days prior.

43.     At roughly 7:55 p.m., Defendant Hoffner initiated a traffic stop at the intersection of Monroeville Blvd and Pike Place in front of the 3952 Northern Pike Garden Apartments. Sherwood briefly slowed his vehicle before doing a U-turn and fleeing.

44.     Defendant Hoffner advised Monroeville Dispatch that he was in pursuit of Sherwood.

45.     Sherwood fled onto William Penn Highway heading West pursued by Defendant Hoffner.

46.     At roughly 7:56 p.m., Defendants MacDonald, Frank, and Persichetti each joined the pursuit in their own police vehicles, totaling four distinct marked police vehicles in pursuit.

47.     Records indicate that the pursuit reached speeds of 107 miles per hour while traveling through residential and commercial areas.

48.     At some point in the pursuit, the Police Officer Defendants knew, or should have known, that their intentional high-speed pursuit of Sherwood was likely to injure innocent bystanders and/or other individuals in vehicle or pedestrians traveling on William Penn Highway or the intersecting roads.

49.     Rather than terminate their pursuit, in conscious disregard of the great risk of harm during the course of their pursuit, and contrary to the vehicle pursuit policies that were or should have been promulgated by their respective police departments, the Police Office Defendants continued to pursue Sherwood at the high rate of speed down William Penn Highway, in a residential area where the speed limit was 35 miles per hour.

50.     The Police Officer Defendants' high speed pursuit of Sherwood continued until roughly 8:00 p.m., when Sherwood ran a red light at the intersection of  William Penn Highway and Graham Boulevard in Wilkinsburg, Pennsylvania, 15235, striking Luis Hernandez.

51.     Mr. Sherwood was traveling at a speed of 62 miles per hour at the time he fatally impacted with Mr. Hernandez.

52.     Following the collision, Mr. Sherwood continued to flee.

53.     The Defendant Officers officially terminated the pursuit at 8:02 p.m. and attempted to render aid to Mr. Hernandez.

54.     Body camera footage clearly shows that Mr. Hernandez was in excruciating pain and extreme distress. His right leg was visibly fractured, he was actively bleeding from several lacerations and on multiple occasions he can be seen vomiting blood on the roadway. Mr. Hernandez was lucid enough to be fully aware of his pain throughout the entire ordeal until his death that evening.

55.     At roughly 8:29 p.m., EMS departed the scene, transporting Hernandez to UPMC Mercy Hospital.

56.     At roughly 10:02 p.m., non-defendant Monroeville officers located Mr. Sherwood in his car on Bessica Street, directly adjacent to Sherwood's home address.

57.     Upon approaching Mr. Sherwood's vehicle, he began to flee again, and attempted to strike an officer in the process.

58.     Police fired several shots into Mr. Sherwood's vehicle, one of which hit Mr. Sherwood in the left arm.

59.     Mr. Sherwood was later caught and taken into custody on August 26, 2022.

## WAIVER OF SOVEREIGN IMMUNITY AGAINST
## LOCAL AGENCIES FOR VEHICLE LIABILITY

60.     The Constitution of the Commonwealth of Pennsylvania provides that "[s]uits may be brought against the Commonwealth in such a manner, in such courts and in such cases as the Legislature may by law direct." [1]

61.     The General Assembly has waived sovereign immunity for actions against local agencies, including Pennsylvania Municipalities and Police Departments as well as the employees thereof, within the Political Subdivision Tort Claims Act ("PSTCA"), specifically at 42 Pa. C.S. § 8542.

62.     Section 8542(b) enumerates acts, that when committed by local agencies and their employees, may impose liability thereby permitting claims.

63.     Section 8542(b)(1) specifically imposes vehicle liability for acts occurring during "[t]he operation of any motor vehicle in the possession or control of the local agency" provided that potential plaintiffs were not fleeing, nor resisting, police officers.

64.     The Police Officer Defendants were operating police vehicles that were in the possession and control of the Defendant Monroeville.

65.     Plaintiffs' Decedent Luis Hernandez was struck and killed due to the Police Officer Defendants' negligent, grossly negligent and reckless operation of such vehicles.

66.     Plaintiffs' Decedent Luis Hernandez was not fleeing, resisting, nor in anyway involved with the Police Officer Defendants' pursuit of Sherwood, but was merely an innocent and uninvolved bystander.

---

[1] *See* PA. CONST., ART. I, SECTION 11.

67.     Under the PSTCA, Plaintiffs are permitted to bring this action under the vehicle liability waiver to sovereign immunity.

## VEHICLE PURSUITS IN PENNSYLVANIA

68.     The Pennsylvania Vehicle Code requires police agencies within the Commonwealth to record all motor vehicle pursuits and report their data to the Pennsylvania State Police ("PSP").[2]

69.     The PSP must collect these reports, analyze the data, and compile and publish an annual summary of its findings.

70.     According to the 2022 Annual PSP Report, police departments across Pennsylvania reported 2,718 vehicle pursuits in 2022.[3]

71.     Only 43.45% of total pursuits ended with an apprehension during the pursuit.[4]

72.     Nearly half, 45.33%, of the total pursuits initiated were discontinued by the police for various reasons, including an officer/supervisor's decision to end the pursuit, or because the violator stopped voluntarily.[5]

73.     The 2022 Annual PSP Report notes that "[t]he basic dilemma associated with highspeed police pursuits of fleeing individuals is deciding whether the benefits of potential apprehension outweigh the risks to police officers, the public, and the violator(s)."[6]

74.     Of the 2,718 pursuits that occurred throughout the Commonwealth in 2022, only two deaths of an uninvolved person are cited in the 2022 Annual Report.[7] Upon information and

---

[2] *See* 75 Pa. C.S.A. §§ 6341-6345.
[3] *See* Exhibit A.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

belief, one such death pertained to the Police Officer Defendants' pursuit of Sherwood and Luis Hernandez's death, resultant from the collision.

## DEFENDANT MONROEVILLE AND ITS SUPERVISORY EMPLOYEES FAILED TO ADOPT, IMPLEMENT, AND ENFORCE PROPER VEHICLE PURSUIT POLICIES

75.     Pennsylvania law requires that police departments develop and implement a written emergency vehicle response policy governing the procedures under which a police officer should initiate, continue, and terminate a motor vehicle pursuit.[8] The policy may be the model policy endorsed by a national or state organization or association of police chiefs or police officers.

76.     Defendant Monroeville is required to develop and implement vehicle pursuit policies that encompass the guidelines above and reasonably should have had policies that met or exceeded endorsed model policies.

77.     Under 75 Pa. Con. Stat. § 6342(c), Pennsylvania police departments must, at a minimum, adopt a pursuit policy with the following procedural elements:

    (1)     Decision making criteria or principles for initiation of pursuit. These criteria or principles may include, but not be limited to:

        (i)     The potential for harm or immediate or potential danger to others if the fleeing individual or individuals escape.

        (ii)    The seriousness of the offense committed or believed to have been committed by the individual or individuals attempting to flee.

        (iii)   Safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.

    (2)     Responsibilities of the pursuing officers.

---

[8] 75 Pa. Con. Stat. § 6341 defines "motor vehicle pursuit" as "[a]n active attempt by a police officer operating a motor vehicle to apprehend one or more occupants of a motor vehicle when the driver of the vehicle is resisting the apprehension by maintaining or increasing his speed or by ignoring the police officer's audible or visual signal to stop."

(3)    Responsibilities for the communications center.

(4)    Responsibilities of the field supervisor.

(5)    Traffic regulations during pursuit, including, but not limited to, the use of emergency equipment, audio signals and visual signals.

(6)    Pursuit tactics.

(7)    Roadblock usage.

(8)    Communication and coordination of pursuit protocol for interjurisdictional pursuit.

(9)    Decision making criteria or principles for termination of pursuit. These criteria or principles may include, but not be limited to, safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.

78.    Defendant Monroeville, Defendant Cole, Defendant MacDonald, in his supervisory capacity, and Defendant Hoffner, in his supervisory capacity, should have adopted, implemented, and enforced vehicle pursuit policies that encompassed some or all of the following guidelines:

a.    that acknowledgment, control, and supervision of a pursuit must be made by a supervising officer;

b.    that officers engaged in the pursuit must acknowledge and/or report the pursuit through police radio;

c.    that the supervising officer may terminate the pursuit at his/her discretion, and that any such decision to terminate is final and not subject to being countermanded;

d.    that, if no justification for the pursuit is given by the initiating officer or unit over police radio, it shall be the responsibility of all supervisors on the specific radio band, to immediately terminate the pursuit;

e.    that pursuits should be terminated as soon as a supervising officer believes it has become too dangerous;

12

f.     that during a pursuit, no more than two (2) marked police vehicles should pursue a suspect vehicle;

g.     that during a pursuit all other available sworn personnel should monitor police radio and be prepared to stop or divert pedestrian or vehicular traffic that may be in the path of an oncoming pursuit;

h.     that, to lessen the possibility of a collision should the fleeing vehicle suddenly stop or change direction, a "safe distance" should always be maintained between the pursued vehicle and the pursuing police vehicles;

i.     that a minimum of five (5) car lengths should always be maintained during any pursuit, and a greater distance may be necessary based upon the speed of the pursuit, road and weather conditions, the suspect vehicle's behavior (i.e., how the vehicle is being operated, etc.), the pursuing vehicle's characteristics, officer's driving experience/capabilities, or any other circumstances that may exist; and

j.     that all vehicles engaged in a pursuit must have, and will operate the police vehicle with, emergency equipment (i.e., lights and sirens) activated continuously throughout the pursuit.

79.    Had Defendant Monroeville, Defendant Cole, Defendant MacDonald and Defendant Hoffner adopted, implemented, and enforced a proper pursuit policy, the Police Officer Defendants would not have pursued Sherwood and caused the collision and resultant injury and harm to Plaintiffs' Decedent.

80.    Under an adequate pursuit policy, the vehicle pursuit of Sherwood would have only been justified if the Police Officer Defendants were:

a.     In close proximity to a suspect vehicle and believed a pursuit was necessary to prevent the death or serious bodily injury of another person; or

b.     In close proximity to a suspect vehicle and believed **both** that:

13

1) the pursuit was necessary to effect the arrest or prevent escape; **and**

2) the police officer had probable cause to believe that the person being pursued had committed or attempted a forcible felony or had probable cause to believe that the person being pursued possessed a deadly weapon, other than the vehicle itself.

81.     Upon information and belief, Defendant Monroeville, Defendant Cole, Defendant MacDonald and Defendant Hoffner negligently, grossly negligently and recklessly failed to adopt such policies or in the alternative, failed to properly implement and enforce such policies.

82.     Upon information and belief, even if adequate policies were in place, Defendant Monroeville, Defendant Cole, Defendant MacDonald and Defendant Hoffner had a custom and practice of disregarding adopted vehicle pursuit policies. This is evident from, among other things, their own conduct and that of the non-supervisory Police Officer Defendants during their pursuit of Sherwood, which conduct failed to conform to any reasonable pursuit policy and fell far below the standard of care required of police officers involved in a vehicle pursuit.

83.     Upon information and belief, as evidenced, in part, by the Police Officer Defendants' actions and omissions during their pursuit of Sherwood, although Defendant Monroeville maintained or should have maintained adequate pursuit policies, Defendant Monroeville, Defendant Cole, Defendant MacDonald and Defendant Hoffner's custom and practice was to consciously disregard, and thus to act with deliberate indifference, the policies they had or should have had in place and to sanction or condone, expressly or implicitly, their respective police officers' violations of the constitutional rights of bystanders when engaging in vehicle pursuits.

84.     Due to the Defendant Monroeville, Defendant Cole, Defendant MacDonald and Defendant Hoffner's failure to properly enforce an adequate pursuit policy, or in the alternative,

14

failure to adequately supervise police officers to ensure that their pursuit policy, if any existed, was properly followed, Plaintiffs sustained the damages set forth herein and Plaintiffs' Decedent, Luis Hernandez, a single father of three, tragically lost his life.

## THE POLICE OFFICER DEFENDANTS VIOLATED ESTABLISHED MODEL VEHICLE PURSUIT POLICIES

85.     Without foregoing any of the previous averments, Plaintiffs allege in the alternative as set forth herein, that the Police Officer Defendants MacDonald, Hoffner, Frank and Persichetti intentionally, willfully, recklessly, and/or negligently failed to adhere to policies and guidelines established by Defendant Monroeville.

86.     The Police Officer Defendants had no reason to believe that their decision to pursue Sherwood was necessary to prevent the death or serious bodily injury of another person, as would be required by an adequate police pursuit policy.

87.     Upon information and belief, the Police Officer Defendants knew, or should have known, Sherwood's identity and current address at the time of their attempted traffic stop and pursuit of Sherwood and, as such, the Police Officer Defendants had no reason to believe that pursuit of Sherwood was necessary to effect the arrest or prevent escape.

88.     Upon information and belief, Plaintiffs further allege that the Police Officer Defendants knew, or should have known, of Sherwood's tendency to flee police based on prior dealings.

89.     The Police Officer Defendants should not have initiated vehicle pursuit when they knew, or should have known, where to locate Sherwood at a time when he would not be in a vehicle.

90.     The Police Officer Defendants should not have pursued Sherwood with four marked police cars as would be prohibited by an adequate police pursuit policy.

91.     Defendant MacDonald knew, or should have known, that the pursuit had become too dangerous to continue when it reached speeds of 107 miles per hour through residential and commercial areas and, as than ranking officer in the pursuit, should have terminated pursuit as would be required by an adequate police pursuit policy.

92.     As a result of the Police Officer Defendants' improper pursuit, Plaintiffs sustained the damages set forth herein and Plaintiffs' Decedent, Luis Hernandez, a single father of three, tragically lost his life.

COUNT I

**Plaintiffs v. Police Officer Defendants<br>Hoffner, MacDonald, Frank and Persichetti**

**42 U.S.C. § 1983 – 14th AMENDMENT<br>SUBSTANTIVE DUE PROCESS VIOLATION**

93.     All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

94.     Under the 14th Amendment of the United States Constitution, citizens are guaranteed the right to Due Process and shall not be deprived of their life, liberty, or property without due process of law. Actions of government officials that demonstrate deliberate indifference to the rights and protections guaranteed to citizens represents a violation of their Due Process rights.

95.     Section 1983 provides that "every person who, under color of [law] of any State... subjects, or causes to be subjected, any [person] to the deprivation of any rights... secured by the Constitution and laws, shall be liable to the party injured in an action at law..." 42 U.S.C. §1983.45.

96.     Actions against state officials seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983

16

97.    The Police Officer Defendants improperly continued their pursuit of Mr. Sherwood in a chase that, at times, reached 107 miles per hour and which went outside of their jurisdiction, which pursuit was initiated and continued based merely upon outstanding warrants, the majority of which were for misdemeanor offenses.

98.    The Police Officer Defendants' improper pursuit of Sherwood also was initiated and continued although the Police Officer Defendants' knew, or should have known, they could avoid vehicle pursuit by approaching Sherwood at his home address.

99.    This improper police pursuit of Sherwood by the Police Officer Defendants occurred during the late evening hours when visibility was limited, at a time when other motorists also travelling on the same and/or nearby roads were likely less alert, tired, and/or with less visibility than daylight hours.

100.    By conducting, continuing, and failing to terminate the improper high speed pursuit of Sherwood in a residential area, the Police Officer Defendants knew or should have known that the pursuit could and/or would foreseeably result in Mr. Sherwood striking others with his vehicle.

101.    By conducting, continuing, and failing to terminate the improper high speed pursuit of Sherwood into a residential area, the Police Officer Defendants knew or should have known that the pursuit could and/or would foreseeably cause injury and possibly death to bystanders such as Luis Hernandez.

102.    The Police Officer Defendants affirmatively used their authority as state actors in deciding to pursue Sherwood to create a danger to Luis Hernandez.

103.    The Police Officer Defendants' decision to conduct, continue, and fail to terminate their high speed pursuit of Mr. Sherwood was so egregious as to shock the conscious.

17

104.    As a result of the above actions, the Police Officer Defendants caused Luis Hernandez to be deprived of life and/or liberty and have violated his clearly established Fourteenth Amendment right under the United States Constitution to substantive due process of law.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,000.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

### COUNT II

**Plaintiffs v. Defendant Cole**
**Defendant MacDonald and Defendant Hoffner**

**42 U.S.C. § 1983 – 14th AMENDMENT**
**SUBSTANTIVE DUE PROCESS VIOLATION**

105.    All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

106.    Under the 14th Amendment of the United States Constitution, citizens are guaranteed the right to Due Process shall not be deprived of their life, liberty, or property without due process of law. Actions of government officials that demonstrate deliberate indifference to the rights and protections guaranteed to citizens represents a violation of their Due Process rights.

107.    Section 1983 provides that "every person who, under color of [law] of any State... subjects, or causes to be subjected, any [person] to the deprivation of any rights... secured by the Constitution and laws, shall be liable to the party injured in an action at law..." 42 U.S.C. §1983.45.

108.    Actions against state officials seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983.

109.    Defendants Cole, MacDonald and Hoffner, were operating in their individual capacities as employees of Defendant Monroeville.

110.    Defendants Cole, MacDonald and Hoffner, acting as supervisors, all failed to adopt, train, and/or enforce appropriate vehicle pursuit policies to employees of Defendant Monroeville.

111.    This failure to institute, train, communicate, and/or enforce proper pursuit policies led to the unconstitutional police pursuit conducted by the Police Officer Defendants and ultimately the injuries and death of Mr. Hernandez.

112.    By failing to properly institute appropriate vehicle pursuit policies, train their officers regarding these policies, and ultimately enforce these policies, Defendants Cole, MacDonald and Hoffner knew, or should have known, that they were putting the civil liberties of innocent citizens in danger.

113.    Defendants Cole, MacDonald and Hoffner willfully, while intentionally or unintentionally, denied Mr. Hernandez the proper public safety measures which would have prevented his injuries and death.

114.    The deliberate indifference of Defendants Cole, MacDonald and Hoffner included, but are not limited to, the following:

    a.    Failing to institute a proper vehicle pursuit policy that complied with the applicable standard of care;

    b.    Failing to communicate and disseminate any applicable vehicle pursuit policies to their underlying officers, departments, and employees;

    c.    Failing to enforce any applicable vehicle pursuit policy with respect to their underlying officers, departments, and employees; and

> d.   Refusing to consider the due process liberties of bystanding citizens when failing to institute, train, and enforce proper vehicle pursuit policies.

115.   As a result of the above actions, the Defendants Cole, MacDonald and Hoffner caused Luis Hernandez to be deprived of life and/or liberty and have violated his clearly established Fourteenth Amendment right under the United States Constitution to substantive due process of law.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,000.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

## COUNT III

### Plaintiffs v. Defendant Monroeville

#### 42 U.S.C. § 1983
#### MONELL LIABILITY

116.   Plaintiffs incorporate all preceding paragraphs as if set forth more fully at length.

117.   The Police Officer Defendants acted under the color of law, and under the authority of one or more interrelated *de facto* policies, practices, and/or customs of the Defendant Monroeville to violate Plaintiffs' Decedent rights as set forth herein.

118.   Defendant Monroeville operated the Monroeville Police Department for the purposes of protecting and serving its citizens.

119.   Defendant Monroeville was responsible for establishing and enforcing policies and procedures regarding police personnel actions, duties, responsibilities, training, procedures, and supervision of its Police Officers to ensure the safety of citizens and police personnel.

120.    Prior to August 26, 2022, it was a *de facto* policy, practice, and/or custom of Defendant Monroeville, through its respective police departments, chiefs of police, mayors, and borough counsels, to inadequately supervise and train their police officers, including the Police Officer Defendants, concerning adequate vehicle pursuit policies and practices, thereby failing to adequately discourage constitutional violations on the part of their police officers. Upon information and belief, Defendant Monroeville did not require appropriate in-service training or re-training of police officers who were known to engage in improper, intentional, willful, reckless, and/or negligent vehicle pursuits.

121.    It was the *de facto* policy, practice, and/or custom of Defendant Monroeville, through its respective police departments, chiefs of police, mayors, and borough councils, to inadequately supervise and train their police officers, including the Police Officer Defendants, to intervene and/or report constitutional violations and misconduct committed by their fellow police officers.

122.    Defendant Monroeville, acting through its respective police departments, chiefs of police, mayors, and borough councils, have adopted and continue to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits, without regard to the model and accepted vehicle pursuit policies and guidelines, which conduct has resulted in subjecting other persons, including innocent bystanders like Mr. Hernandez, to unjustifiable risks of property damage, personal injury, and death.

123.    As a result of the above-described practices, policies, and/or customs, Defendant Monroeville's respective police officers, including the Police Officer Defendants, believed that their actions would not be properly monitored by supervisory police officers and/or other

21

employees of the Defendant Monroeville, and that this improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by the Defendant Monroeville.

124.    As a result of the above actions, the Defendant Monroeville caused Mr. Hernandez to be deprived of his rights, privileges, and immunities secured to him by 42 U.S.C. § 1983 and by the Fourteenth Amendment to the United States Constitution as well as the rights, privileges, and immunities provided by the Pennsylvania Constitution.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,000.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

## COUNT IV

### Plaintiffs v. Police Officer Defendants
### Hoffner, MacDonald, Frank, and Persichetti

### PENNSYLVANIA STATE LAW — NEGLIGENCE

125.    Plaintiffs incorporate all preceding paragraphs as if set forth more fully at length.

126.    In so far as the Police Officer Defendants were employees of a "local agency" as described in 42 Pa. C.S. § 8542, the Police Officer Defendants are liable to Plaintiffs for damages under the vehicle liability exception to sovereign immunity.

127.    Alternatively, in so far as the Police Officer Defendants were not employees of a "local agency" as described in 42 Pa. C.S. § 8542, the Police Officer Defendants are liable to Plaintiffs under Pennsylvania common law for damages arising out of negligence.

128.    The negligence, carelessness, and/or recklessness of the Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, acting at all times relevant hereto as police officers of Defendant Monroeville' respective police departments, was the direct

22

and proximate cause of the Collision and the injuries and damages sustained by Plaintiffs'

Decedent. This conduct consisted of, but was not limited to all or some of the following particulars:

a. Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

b. Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of Sherwood's outstanding warrants, the majority of which were for misdemeanor offenses;

c. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

d. Failing to recognize and use alternative means to apprehend Sherwood, such as approaching him at his known address;

e. Failing to appropriately coordinate the apprehension of Sherwood amongst all Police Officer Defendants and with other members of the Defendant Monroeville' respective police departments;

f. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

g. Failing to take reasonable action to increase the likelihood that William Penn Highway and any intersecting roads would be clear of traffic in the area of the pursuit;

h. Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

i. Driving at excessive speeds and by continuing the pursuit which encouraged Sherwood to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

j. Failing to use all auditory and visual alert systems, including vehicle horns and public address systems, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicle that Hernandez was travelling in, of the pursuit;

k.    Failing to terminate the pursuit when the Police Officer Defendants knew, or should have known, that the potential for serious bodily injury outweighed any government interest;

l.    Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising officers;

m.    Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n.    Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Sherwood;

o.    Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Mr. Hernandez was travelling in; and

p.    Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, et seq., and 3716.

129.    As a direct result of the negligent, careless, and/or reckless conduct of the Police Officer Defendants, Plaintiffs sustained damages, including those articulated herein.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,000.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

## COUNT V

### Plaintiffs v. Police Officer Defendants
### Hoffner, MacDonald, Frank, and Persichetti

## PENNSYLVANIA STATE LAW — RECKLESS DISREGARD OF SAFETY

130.   Plaintiffs incorporate all preceding paragraphs as if set forth more fully at length.

131.   The Police Officer Defendants had knowledge of the extreme danger to which they subjected members of the public, including the Plaintiffs' Decedent, during the vehicle pursuit. They were aware of the inherent danger of a high-speed chase in that area. They were also aware that they were able to terminate the risk of harm by stopping or altering the pursuit.

132.   The Police Officer Defendants intentionally failed to adhere to their duties as police officers with respect to public safety and vehicle pursuits, as described above, knowing or having reason to know that their acts and omissions created an unreasonable and substantial risk of harm to members of the public, including Plaintiffs' Decedent.

133.   The improper conduct of the Police Officer Defendants, as alleged herein, constituted the tort of reckless disregard of safety. *See,* Restat 2d of Torts, § 500.

134.   As a result of the Police Officer Defendants conduct, Plaintiffs' Decedent suffered damages, including those articulated herein.

135.   The actions and conduct of the Police Officer Defendants exceeded the normal standards of decent conduct and were reckless, willful, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,000.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

## COUNT VI

### Plaintiffs v. Defendant Monroeville

### PENNSYLVANIA STATE LAW — Negligence (Vicarious Liability)

136.     Plaintiffs incorporate all preceding paragraphs as if set forth more fully at length.

137.     The Police Officer Defendants were the agents, servants, workmen, and employees of Defendant Monroeville, and at all relevant times were engaged in the service and the performance of their duties as police officers employed by or as agents of Defendant Monroeville.

138.     On August 26, 2022, prior to and during the course of the pursuit, the Police Officer Defendants were operating vehicles owned by Defendant Monroeville and had the Defendant Monroeville's permission to operate said vehicles.

139.     The negligence, carelessness, and/or recklessness of Defendant Monroeville, acting alone, jointly, and/or in concert and conspiracy, themselves and through its agents, including the Police Officer Defendants, and at all times relevant hereto acting within the scope of their employment with or agency from Defendant Monroeville, was the direct and proximate cause of the Collision and the injuries and damages sustained by Plaintiffs' Decedent. That conduct consisted of, but was not limited to all or some of the following particulars:

a.     Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

b.     Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of the Sherwood's outstanding warrants, the majority of which were for misdemeanor offenses;

c.     Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

d.  Failing to recognize and use alternative means to apprehend Sherwood, such as approaching him at his known address;

e.  Failing to appropriately coordinate the apprehension of Sherwood amongst all Police Officer Defendants and with other members of the Defendant Monroeville' respective police departments;

f.  Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

g.  Failing to take reasonable action to increase the likelihood that William Penn Highway and any intersecting roads would be clear of traffic in the area of the pursuit;

h.  Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

i.  Driving at excessive speeds and by continuing the pursuit which encouraged Sherwood to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

j.  Failing to use all auditory and visual alert systems, including vehicle horns, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicles that Mr. Hernandez was travelling in, of the pursuit;

k.  Failing to terminate the pursuit when the Police Officer Defendants knew, or should have known, that the potential for serious bodily injury outweighed any government interest;

l.  Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising officers;

m.  Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n.  Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Sherwood;

27

o.   Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Mr. Hernandez was travelling in; and

p.   Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, et seq., and 3716.

140.   Defendant Monroeville is liable for the negligent, careless and/or reckless acts of their agents, servants, workmen and/or employees, the Police Officer Defendants, as set forth herein pursuant to the doctrine of *respondeat superior* and are thus liable to Plaintiffs' Decedent for damages, including those articulated herein.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,000.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

## COUNT VII

### Plaintiffs v. All Defendants

### WRONGFUL DEATH (42 Pa. C.S.A. § 8301, *et seq.*)

141.   Plaintiffs incorporate all preceding paragraphs as if set forth more fully at length.

142.   Plaintiffs brings this action on behalf of themselves as joint Administratrixes and as representatives of the wrongful death beneficiaries of Luis Hernandez, pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301 *et seq.*, and claim all damages recoverable under the Pennsylvania Wrongful Death Act.

143.   The injuries, damages and death sustained by Luis Hernandez as set forth herein, were directly and proximately caused by the intentional, willful, reckless, careless and/or negligent conduct of Defendants, as set forth herein.

144.    As a direct and proximate result of the intentional, willful, reckless, careless, and/or negligent conduct of all Defendants, Luis' Hernandez's wrongful death beneficiaries suffered, are suffering, and will continue to suffer damages, injuries, and losses, including, but not limited to, a loss of financial support and contributions beneficiaries would have received from Luis Hernandez, including monies which Luis Hernandez would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation, and gifts as well as the guidance, love, and kinship of their son and father respectively.

145.    As a direct and proximate result of the intentional, willful, reckless, careless and/or negligent conduct of Defendants, Luis Hernandez's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of kinship and sums of monies which Luis Hernandez would have contributed to their support.

146.    As a direct and proximate result of intentional, willful, reckless, careless and/or negligent conduct of Defendants, Luis Hernandez's wrongful death beneficiaries have been caused to suffer the aforesaid damages, for which Plaintiffs, as Administratrixes of the Estate of Luis Hernandez, here make claim.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,00.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

## COUNT VIII

### Plaintiffs v. All Defendants

### SURVIVAL ACT (42 Pa. C.S.A. § 8302 et seq.)

147.    Plaintiffs incorporate all preceding paragraphs as if set forth more fully at length.

148.    Plaintiffs bring this action on behalf of the Estate of Luis Hernandez pursuant to the Survival Statute of the Commonwealth of Pennsylvania Act, 42 Pa. C.S.A. § 8302 *et seq.*, and claims all damages recoverable thereunder.

149.    The injuries sustained by Luis Hernandez as set forth herein, including, but not limited to, his death, were proximately caused by the intentional, willful, reckless, careless, and/or negligent conduct of Defendants.

150.    As a direct and proximate result of the intentional, willful, reckless, careless, and/or negligent conduct of Defendants, Luis Hernandez suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described herein and, loss of earnings throughout his life expectancy, for which Plaintiffs, as Administratrixes of the Estate of Luis Hernandez, here make claim.

WHEREFORE, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, Deceased, demand compensatory damages from Defendants in an amount in excess of $50,000.00, plus interest, costs of suit, and attorneys' fees, to recover which this suit is brought.

### DAMAGES

151.    As a direct and proximate result of the intentional, willful, reckless, careless, negligent, and/or grossly negligent conduct of Defendants, Luis Hernandez suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries and ultimate death

as described herein. Plaintiffs and Luis Hernandez's three children lost the love, companionship and guidance of Luis Hernandez as well as the monies which Luis Hernandez would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation, and gifts as described herein.

152.   As to all Federal Claims, Counts I, II and III, as a direct and proximate result of the intentional, willful, reckless, careless, negligent, and/or grossly negligent conduct of Defendants as is set forth above, Plaintiffs claim damages from the Defendants for all sums recoverable by Federal law, including but not limited to:

a.   Compensatory damages against the Defendants, jointly and severally, in an amount to be determined at trial;

b.   Punitive damages against the individual Police Officer Defendants for their conduct in an amount to be determined at trial, in order that such award will deter similar prohibited behavior by defendants and other law enforcement officers in the future;

c.   Pre-judgment and post-judgment interest and recovery of Plaintiffs' costs, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988 and 42 U.S.C. § 1920, against Defendants, jointly and severally; and

d.   Any and all other relief to which Plaintiffs may be entitled.

153.   As to all State Law and Wrongful Death Claims, Counts IV, V, VI, and VII, as a direct and proximate result of the intentional, willful, reckless, careless, negligent, and/or grossly negligent conduct of Defendants as is set forth above, Plaintiffs claim damages from the Defendants for all sums recoverable by Pennsylvania law and Pennsylvania Wrongful Death Act, including but not limited to:

a.  The pecuniary damages sustained as a result of the death of Luis Hernandez, including the survivors' expected share of lost earnings and lost future earning capacity;

b.  The medical expenses incurred as a result of the death of Luis Hernandez;

c.  The funeral expenses necessitated by the death of Luis Hernandez;

d.  The expense of administration of the estate of Luis Hernandez;

e.  The services, assistance, guidance, counseling, companionship, and society of Luis Hernandez that has been denied and forever lost; and,

f.  Such other items of damages and losses which are permitted by the Pennsylvania Wrongful Death Act and other Pennsylvania law.

154.    As to all Survival Claims, Count VIII, as a direct and proximate result of the intentional, willful, reckless, careless, negligent, and/or grossly negligent conduct of Defendants as is set forth above, Plaintiffs Nilda Roque and Evelyn Hernandez, as Administratrixes of the Estate of Luis Hernandez, seeks damages for the following items:

a.  All medical and hospital expenses incurred as a result of the death of Luis Hernandez;

b.  The loss of earnings and earning capacity suffered by the decedent from the date of his death until sometime in the future as he likely would have lived had he not died as a result of the injuries sustained as a result of the high-speed police chase;

c. All damages for conscious pain, suffering and fear of death which Luis Hernandez underwent prior to his death; and

d. All damages otherwise recoverable   pursuant to the Pennsylvania Survival Act and other Pennsylvania law.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

ROBERT PEIRCE & ASSOCIATES, P.C.

By:_____

ROBERT F. DALEY, ESQUIRE
Counsel for Plaintiffs

33

# PENNSYLVANIA POLICE PURSUITS



# ANNUAL REPORT



Prepared by: Pennsylvania State Police
Bureau of Research and Development



## EXECUTIVE SUMMARY

The Pennsylvania Vehicle Code defines a pursuit as "an active attempt by a police officer operating a motor vehicle to apprehend one or more occupants of a motor vehicle when the driver of the vehicle is resisting the apprehension by maintaining or increasing his speed or by ignoring the police officer's audible or visual signal to stop." Since 1996, the Vehicle Code has required police departments in Pennsylvania to make a record of all vehicle pursuits and to report them to the Pennsylvania State Police.

Police officers in Pennsylvania reported a total of 2,718 pursuits in 2022. The following are noteworthy statistics taken from this report:

- 9 individuals were killed as a result of pursuit-related crashes. Of the 9 fatalities, 7 were violators; 2 were uninvolved persons; and 0 were police officers.

- 777 pursuits resulted in a total of 989 crashes (more than one crash may occur during a single pursuit), with 281 of the pursuits resulting in injury to the violator, police, and/or uninvolved persons.

- 57.06% of pursuits resulted in the arrest of one or more persons. 57.17% of the pursuits were accomplished using a trailing pursuit, the least forceful technique.

# PENNSYLVANIA POLICE PURSUIT ANNUAL REPORT

Pennsylvania Consolidated Statutes, Title 75, and the Pennsylvania Vehicle Code, §6341–§6345, require police agencies within the Commonwealth to make a record of all motor vehicle pursuits and to report this data to the Pennsylvania State Police (PSP). The PSP is required to collect these reports, analyze the data, and compile and publish an annual summary of the findings.

The purpose of the detailed analysis contained within the Pennsylvania Police Pursuit Annual Report is to help identify both positive and negative factors influencing the outcome of vehicular pursuits, validate or refute the merits of pursuit policies and apprehension techniques, and recognize training successes and deficiencies. The analysis of pursuit statistics enhances the safety of police officers and the public they serve.

The information contained in this report is broken down into three major sections:

- Pursuit Factor Analysis
- Five-Year Trend Analysis
- Cross-Tabulation Analysis

Pursuit Factor Analysis examines the dynamics involved before, during, and after a pursuit was initiated by police. Pursuit Factor Analysis considers variables such as the reasons pursuits were initiated, the types of vehicles pursued, the tactics utilized by police during pursuits, and the reasons pursuits were terminated. Some other pursuit-related aspects analyzed in this section are pursuit-related crashes, injuries, fatalities, and property damage. A summary of Pursuit Factor Analysis is found within this report. Previous year comparison Pursuit Factor Analysis data can be found in Appendix A.

Five-Year Trend Analysis examines pursuit trends over the past five years in five major pursuit factor categories (total number of pursuits, apprehension rates, crash rates, total number of fatalities, and total number of injured persons). By examining these trends, officials can better identify and address successes and deficiencies in pursuit techniques and policies. A Five-Year Trend Analysis can be found in Appendix B.

Cross-Tabulation Analysis breaks down pursuit factor data in relation to one another, providing greater insight into the dynamics of police pursuits. For example, Reason Initiated – Crash Cross-Tabulation Analysis examines the likelihood of pursuit-related crashes based upon the reasons pursuits were initiated. The results of this analysis can reveal valuable information concerning the likelihood of a crash occurring in relation to the reason a pursuit was first initiated (e.g., traffic violation, driving under the influence, stolen vehicle, felony criminal activity). Officials can utilize the results of the Cross-Tabulation Analysis to identify problem areas and make the necessary changes to pursuit policies, training, and techniques. A summary of the Cross-Tabulation Analysis is found within this report. Further details of the Cross-Tabulation Analysis can be found in Appendix C.

A list of Pennsylvania law enforcement agencies who have not notified or certified to the Municipal Police Officers' Education and Training Commission that they have a pursuit policy can be found in Appendix D.

Detailed definitions of terminology contained in this report can be found in Appendix E.

## PURSUIT FACTOR ANALYSIS

Pursuit factors listed in this section were compiled and analyzed from data obtained from the Pennsylvania Police Pursuit Reporting System. These factors were comprehensively analyzed by combining pursuit reports from municipal police departments and the PSP.

Due to the lack of a national pursuit database, and because law enforcement agencies maintain different reporting procedures, there is little comparative information available for use in conducting extensive analytical research on this subject. However, several independent studies revealed similar results as Pennsylvania in the analysis of certain pursuit factors, such as apprehension, collision, and fatality rates.

Pursuit factor data for calendar year 2022 is provided below. Previous-year data is provided for comparison in Appendix A. A Five-Year Trend Analysis is contained in Appendix B.

**Reason Initiated:**

The most common reason for a pursuit to be initiated was for other traffic offenses, such as exceeding the maximum speed limit, stop sign and yield sign violations, etc. (Appendix A, Fig. 1). These factors accounted for 53.79% of all pursuits.

Felony criminal offenses were the second highest cause, accounting for 12.58% of initiated pursuits, while 11.41% of pursuits originated due to driving under the influence (DUI) or suspected DUI operator (Appendix A, Fig. 1).

**Apprehension:**

This pursuit factor was designed to identify the number and percentage of pursuits that resulted in a violator's apprehension. Furthermore, if a violator was not apprehended, this factor serves to identify why an apprehension did not occur.   Nearly half of the pursuits (43.45%) ended with an apprehension during the pursuit. In addition, 8.79% of pursuits resulted in a delayed apprehension. By combining "during" and "delayed" apprehensions, approximately 52.24% of all pursuits resulted in an apprehension (Appendix A, Fig. 2).

**Reason Terminated:**

This pursuit factor categorizes the reasons pursuits were terminated or what factors caused a pursuit to end.

Of the 2,718 pursuits, 45.33% were discontinued by the police. Pursuits were discontinued for a number of reasons, including officer/supervisor decision to end the pursuit, the violator eluded the police, etc. (Appendix A, Fig. 3).

20.38% of pursuits were ended because the violator stopped voluntarily. Stopped by collision accounted for 13.65% of all terminated pursuits (Appendix A, Fig. 3).

**Crash Type:**

71.41% of the reported pursuits ended without a collision. Of the 2,718 total pursuits, 777 resulted in a total of 989 crashes. The following is a breakdown of the types of crashes that were reported (Appendix A, Fig. 4). More than one crash may occur during a single pursuit.

> Violator Crash: 527
> Police Crash: 48
> Uninvolved Crash: 29
> Violator/Police Crash: 62
> Violator/Uninvolved Unoccupied Crash: 48
> Violator/Uninvolved Occupied Crash: 106
> Violator/Police Deliberate Intent: 29
> Violator/Uninvolved Deliberate Intent: 3
> Police/Violator Legal Intervention: 117
> Uninvolved/Police Crash: 3
> Police/Tire Deflation Deployment Crash: 2
> Uninvolved/Tire Deflation Deployment Crash: 3
> Violator/Tire Deflation Deployment Crash: 12

**Ending Apprehension:**

This pursuit factor measures what apprehension techniques police utilized to end each pursuit. Over half (57.17%) of all pursuits ended as a result of a trailing pursuit. Pursuit data analysis reveals that police utilized minimum or no force in the majority of pursuits (Appendix A, Fig. 5).

**Violators Arrested:**

The majority of pursuits ended with the arrest of the fleeing violator.  Of the reported pursuits, 49.52% involved the arrest of one violator, while 7.54% involved the arrest of multiple persons (Appendix A, Fig. 6).

**Type of Police Vehicle:**

Marked police vehicles were solely involved in 84.40% of pursuits; 7.58% involved unmarked police vehicles only; and 8.02% utilized both marked and unmarked vehicles (Appendix A, Fig. 7).

**Type of Vehicle Pursued:**

Pursuit analysis indicates that 56.99% of police pursuits involved automobiles; 13.94% involved motorcycles; and 25.64% involved vans, pick-ups, or sport-utility vehicles (Appendix A, Fig. 8).

**Number of Injuries:**

Of the 2,718 initiated pursuits, 281, or 10.34%, resulted in injuries to 311 persons (more than one injury can occur in a single pursuit). Of the 311 injured persons, 214 were violators, 49 were police officers, and 48 were uninvolved persons (Appendix A, Fig. 9).

**Number of Fatalities:**

There were 9 deaths that occurred during police pursuits in 2022. A breakdown of the fatalities is as follows:  7 violator deaths, 2 uninvolved person death, and 0 police deaths (Appendix A, Fig. 10).

**Property Damage:**

Violators incurred an average of $773.96 in property damage per pursuit; police incurred an average of $404.04 in damage per pursuit; and uninvolved persons incurred an average of $912.79 in property damage per pursuit (Appendix A, Fig. 11).

**Non-pursuit-Related Offenses:**

Non-pursuit-related offenses represent those violations which did not occur during the pursuit but occurred prior to the encounter, during initiation, or at the apprehension stage of the pursuit. The total reported non-pursuit-related Vehicle Code violations was 1,349; the total reported non-pursuit-related Crimes Code violations was 689; and the total reported non-pursuit-related controlled substance offenses was 549 (Appendix A, Fig. 12).

Vehicle Code violations were heavily concentrated in Chapter 13, Chapter 15, and Chapter 38. Violations primarily consisted of the following offenses (Appendix A, Fig. 14):

Chapter 13
- Registration and Certificate of Title Required

Chapter 15
- Drivers Required to be Licensed
- Driving While Operating Privilege is Suspended or Revoked

Chapter 38
- Driving Under Influence of Alcohol or Controlled Substance

Criminal violations were heavily concentrated in Chapter 39 of the Pennsylvania Crimes Code. Chapter 39 violations primarily consisted of the following offenses (Appendix A, Fig. 15):

- Receiving Stolen Property
- Theft by Unlawful Taking or Disposition
- Unauthorized Use of Automobiles and Other Vehicles

Controlled substance violations were heavily concentrated in Sections CS13(a)16, CS13(a)31, and CS13(a)32. These sections are comprised primarily of the following offenses (Appendix A, Fig. 16):

- CS13(a)16   Possession of a Controlled Substance
- CS13(a)31   Possession of Small Amount of Marijuana
- CS13(a)32   Possession of Paraphernalia

**Pursuit-Related Offenses:**

Pursuit-related offenses represent those violations committed during the course of a pursuit (Appendix A, Fig. 13).

Pursuit-related Vehicle Code offenses were primarily comprised of Chapter 33 and Chapter 37 violations. Chapter 33 and Chapter 37 violations encompass the following offenses (Appendix A, Fig. 17):

Chapter 33
- Driving on Right Side of Roadway
- Limitations on Driving on Left Side of Roadway
- No-Passing Zones
- One-way Roadways and Rotary Traffic Islands
- Driving on Roadways Laned for Traffic
- Stop Signs and Yield Signs
- Duty of Driver on Approach of Emergency Vehicle
- Turning Movements and Required Signals
- Driving Vehicle at Safe Speed
- Maximum Speed Limits

Chapter 37
- Careless Driving
- Trespass by Motor Vehicle
- Homicide by Vehicle
- Fleeing or Attempting to Elude Police Officer
- Driving Without Lights to Avoid Identification or Arrest
- Homicide By Vehicle While DUI
- Aggravated Assault by Vehicle While DUI
- Reckless Driving
- Accidents Involving Damage to Attended Vehicle or Property
- Accidents involving Damage to Unattended Vehicle or Property

Pursuit-related Crimes Code offenses were primarily comprised of Chapter 27 violations. Chapter 27 violations include the following offenses (Appendix A, Fig. 18):

- Recklessly Endangering Another Person
- Aggravated Assault
- Simple Assault

## FIVE-YEAR TREND ANALYSIS

Five-Year Trend Analysis examines pursuit trends over the past five years in five key pursuit factor categories (total number of pursuits, apprehension rates, crash rates, total number of fatalities, and total number of injuries). By examining pursuit trends, officials can better identify and address successes and deficiencies in pursuit techniques and policies. A Five-Year Trend Analysis can be found in Appendix B.

## CROSS-TABULATION ANALYSIS

This section analyzes pursuit factors in relation to one another, providing greater insight into the dynamics of police pursuits. This analysis can be found in Appendix C.

### Apprehension – Type of Vehicle Pursued:

Most fleeing violators/vehicles are apprehended during police pursuits. Apprehension rates, consisting of "during" and "delayed" apprehensions for the different types of vehicles pursued, were as follows in 2022: automobiles 53.45%; motorcycles 40.37%; vans/pick-ups/sport-utility vehicles 56.10%; other vehicles (example: all-terrain vehicles) 50.00%; and truck-tractor/semitrailers 100.00% (Appendix C, Fig. 19).

### Crash – Type of Vehicle Pursued:

The majority of reported pursuits (71.41%) did not involve collisions. 68.17% of pursued automobiles, 86.02% of pursued motorcycles, and 69.15% of pursued vans/pick-ups/sport-utility vehicles were not involved in crashes (Appendix C, Fig. 20).

### Reason Terminated – Type of Vehicle Pursued:

Overall, 45.33% of police pursuits were discontinued by the officer(s) involved. In analyzing the reasons why each pursuit was discontinued with respect to the type of vehicle pursued, it was discovered that the greatest percentage of discontinued pursuits (65.96%) involved motorcycles (Appendix C, Fig. 21).

### Reason Initiated – Apprehension:

Pursuits initiated because of a DUI or suspected DUI operator resulted in an apprehension 72.58% of the time. Apprehension rates for pursuits initiated for felony criminal offenses, misdemeanor criminal offenses, traffic violations, stolen or suspected stolen vehicles, and summary criminal offenses ranged from 47.13% to 58.77% (Appendix C, Fig. 22).

**Reason Initiated – Crash:**

This comparison examines the likelihood of pursuit-related crashes based upon the reasons pursuits were initiated. The following "reason initiated" categories had the following prevalence of crashes in 2022: DUI or suspected DUI operator, 35.16%; felony criminal offenses, 37.43%; misdemeanor criminal offenses, 23.66%; other traffic offenses, 23.67%; stolen or suspected stolen vehicles, 41.84%; and summary criminal offenses, 23.53% (Appendix C, Fig. 23).

**Reason Initiated – Termination:**

The "reason initiated" that resulted in the highest percentage of discontinued pursuits was other traffic offenses at 60.55%, whereas summary criminal offenses showed the lowest percentage of discontinued pursuits at 4.79%. The greatest percentage of pursuits stopped voluntarily (54.15%) involved other traffic offenses (Appendix C, Fig. 24).

## CONCLUSION

Few areas of police work raise as much public scrutiny as police pursuits. The basic dilemma associated with high-speed police pursuits of fleeing individuals is deciding whether the benefits of potential apprehension outweigh the risks to police officers, the public, and the violator(s).

The detailed analysis in this report can be used to help identify both positive and negative factors influencing the outcome of vehicular pursuits, validate or refute the merits of pursuit policies and apprehension techniques, and recognize training successes and deficiencies. It is intended that the statistics gathered will enable police departments throughout the Commonwealth to enhance the safety of their officers and the public they serve.

# APPENDIX A

# PURSUIT FACTOR ANALYSIS

| REASON INITIATED | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| DUI or Suspected DUI Operator | 310 | 11.41% | 312 | 11.91% |
| Felony Criminal Offenses | 342 | 12.58% | 303 | 11.57% |
| Misdemeanor Criminal Offenses | 186 | 6.84% | 166 | 6.34% |
| Other Traffic Offenses | 1,462 | 53.79% | 1,529 | 58.38% |
| Stolen or Suspected Stolen Vehicle | 282 | 10.38% | 194 | 7.41% |
| Summary Criminal Offenses | 136 | 5.00% | 115 | 4.39% |

| Figure #1 |
|---|

| APPREHENSION | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Apprehended During Pursuit (Incl. on Foot) | 1,181 | 43.45% | 1,294 | 49.41% |
| Delayed - After Termination | 239 | 8.79% | 240 | 9.16% |
| None - Decision Made to Terminate | 620 | 22.81% | 546 | 20.85% |
| None - Stopped, but Escaped on Foot | 119 | 4.38% | 116 | 4.43% |
| None - Violator Successfully Eluded Police | 559 | 20.57% | 423 | 16.15% |

Figure #2

| REASON TERMINATED | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Violator Abandoned Vehicle | 134 | 4.93% | 127 | 4.85% |
| Stopped By Collision | 371 | 13.65% | 385 | 14.70% |
| Police Crash | 10 | 0.37% | 13 | 0.50% |
| Discontinued | 1,232 | 45.33% | 1,061 | 40.51% |
| Other Police Action/Induced | 173 | 6.36% | 198 | 7.56% |
| Police Vehicle Disabled | 14 | 0.52% | 12 | 0.46% |
| Violator Vehicle Disabled | 230 | 8.46% | 207 | 7.90% |
| Voluntary Stop | 554 | 20.38% | 616 | 23.52% |

| Figure #3 |
|---|

| CRASH TYPE | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Pursuits Without Crashes | 1,941 | 71.41% | 1,835 | 70.06% |
| Pursuits With Crashes | 777 | 28.59% | 784 | 29.94% |
| Police/Tire Deflation Deployment Crash | 2 | 0.20% | 4 | 0.38% |
| Uninvolved/Tire Deflation Deployment Crash | 3 | 0.30% | 2 | 0.19% |
| Violator/Tire Deflation Deployment Crash | 12 | 1.21% | 16 | 1.52% |
| Violator Crash | 527 | 53.29% | 541 | 51.33% |
| Police Crash | 48 | 4.85% | 54 | 5.12% |
| Uninvolved Crash | 29 | 2.93% | 23 | 2.18% |
| Violator/Police Crash | 62 | 6.27% | 75 | 7.12% |
| Violator/Uninvolved Crashes | 154 | 15.57% | 154 | 14.61% |
| Violator/Police Deliberate Intent | 29 | 2.93% | 39 | 3.70% |
| Violator/Uninvolved Deliberate Intent | 3 | 0.30% | 4 | 0.38% |
| Police/Violator Legal Intervention | 117 | 11.83% | 136 | 12.90% |
| Uninvolved/Police Crash | 3 | 0.30% | 6 | 0.57% |
| Total Crashes: * | 989 | | 1,054 | |

| Figure #4 |
|---|

* Multiple crashes may occur during a single pursuit.

| ENDING APPREHENSION | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| None | 876 | 32.23% | 789 | 30.13% |
| Trailing Pursuit | 1,554 | 57.17% | 1,492 | 56.97% |
| Other Induced Stop | 82 | 3.02% | 99 | 3.78% |
| Rolling Roadblock | 13 | 0.48% | 24 | 0.92% |
| Legal Intervention | 136 | 5.00% | 147 | 5.61% |
| Partial Roadblock | 9 | 0.33% | 16 | 0.61% |
| Tire Deflation Device | 35 | 1.29% | 40 | 1.53% |
| Total Roadblock | 2 | 0.07% | 2 | 0.08% |
| Firearms | 8 | 0.29% | 8 | 0.31% |
| Air Support | 3 | 0.11% | 2 | 0.08% |

| Figure #5 |
|---|

| VIOLATORS ARRESTED/PURSUIT | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Zero Arrested | 1,167 | 42.94% | 941 | 35.93% |
| One Arrested | 1,346 | 49.52% | 1,482 | 56.59% |
| Two Arrested | 152 | 5.59% | 150 | 5.73% |
| Three Arrested | 40 | 1.47% | 33 | 1.26% |
| Four Arrested | 10 | 0.37% | 10 | 0.38% |
| Five or More Arrested | 3 | 0.11% | 3 | 0.11% |
| Pursuits With Arrests: | 1,551 | 57.06% | 1,678 | 64.07% |

| Figure #6 |
|---|

| TYPE OF POLICE VEHICLE | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Marked and Unmarked | 218 | 8.02% | 221 | 8.44% |
| Marked | 2,294 | 84.40% | 2,184 | 83.39% |
| Unmarked | 206 | 7.58% | 214 | 8.17% |

Figure #7

| TYPE OF VEHICLE PURSUED | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Automobile | 1,549 | 56.99% | 1,459 | 55.71% |
| Motorcycle | 379 | 13.94% | 362 | 13.82% |
| Other | 90 | 3.31% | 90 | 3.44% |
| TT or TT/STLR | 3 | 0.11% | 5 | 0.19% |
| Van/Pickup/SUV | 697 | 25.64% | 703 | 26.84% |

| Figure #8 |
|---|

| NUMBER PURSUITS WITH INJURIES | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Pursuits With Injuries | 281 | 10.34% | 290 | 11.07% |
| Pursuits Without Injuries | 2,437 | 89.66% | 2,329 | 88.93% |
| Violators Injured | 214 | 76.16% | 224 | 77.24% |
| Police Officers Injured | 49 | 17.44% | 62 | 21.38% |
| Uninvolved Persons Injured | 48 | 17.08% | 43 | 14.83% |
| Total Injured: * | 311 | | 329 | |

| Figure #9 |
|---|

* Multiple injuries may occur during a single pursuit.

| NUMBER OF PURSUITS WITH FATALITIES | 2022 | | 2021 | |
|---|---|---|---|---|
| | N | % | N | % |
| Pursuits With Fatalities | 9 | 0.33% | 13 | 0.50% |
| Pursuits Without Fatalities | 2,709 | 99.67% | 2,606 | 99.50% |
| Violator Fatalities | 7 | 77.78% | 13 | 100.00% |
| Police Fatalities | 0 | 0.00% | 0 | 0.00% |
| Uninvolved Person Fatalities | 2 | 22.22% | 0 | 0.00% |
| Total Fatalities: * | 9 | | 13 | |

| Figure #10 |
|---|

* More than one fatality may occur during a single pursuit.

| PROPERTY DAMAGE TOTALS | 2022 | 2021 |
|---|---|---|
| Violator Damage | $2,103,611.00 | $2,800,422.00 |
| Police Damage | $1,098,194.00 | $781,695.00 |
| Uninvolved Damage | $2,480,958.00 | $1,717,269.00 |

Damage Rate Per Pursuit:

| | | |
|---|---|---|
| Violator Damage | $773.96 | $1,069.27 |
| Police Damage | $404.04 | $298.47 |
| Uninvolved Damage | $912.79 | $655.70 |

| Figure #11 |
|---|

| TYPES OF NON-PURSUIT-RELATED OFFENSES | 2022 Pursuits | 2021 Pursuits |
|---|---|---|
| Crimes Code | 689 | 637 |
| Vehicle Code | 1,349 | 1,505 |
| Controlled Substance | 549 | 646 |

Figure #12

| TYPES OF PURSUIT-RELATED OFFENSES | 2022 Offenses | 2021 Offenses |
|---|---|---|
| Crimes Code | 845 | 910 |
| Vehicle Code | 7,015 | 7,640 |

Figure #13

| TYPES OF NON-PURSUIT-RELATED VEHICLE CODE OFFENSES | |
|---|---|
| VC1301 | 180 |
| VC1372 | 28 |
| VC1501 | 140 |
| VC1543 | 288 |
| VC1786 | 97 |
| VC3802 | 337 |
| VC4703 | 55 |
| VCOther | 224 |

| Figure #14 |
|---|

| TYPES OF NON-PURSUIT-RELATED CRIMES CODE OFFENSES | |
|---|---|
| CC2701 | 26 |
| CC3921 | 70 |
| CC3925 | 182 |
| CC3928 | 51 |
| CC5104 | 101 |
| CC6308 | 9 |
| CCOther | 250 |

| Figure #15 |
|---|

| TYPES OF NON-PURSUIT-RELATED CONTROLLED SUBSTANCE OFFENSES | |
|---|---|
| CS13(a)00 | 6 |
| CS13(a)16 | 157 |
| CS13(a)30 | 68 |
| CS13(a)31 | 116 |
| CS13(a)32 | 172 |
| CSOther | 30 |

| Figure #16 |
|---|

| TYPES OF PURSUIT-RELATED VEHICLE CODE OFFENSES | |
|---|---|
| VC3111 | 260 |
| VC3112 | 310 |
| VC3301 | 265 |
| VC3306 | 65 |
| VC3307 | 87 |
| VC3308 | 56 |
| VC3309 | 321 |
| VC3323 | 449 |
| VC3325 | 139 |
| VC3334 | 289 |
| VC3361 | 512 |
| VC3362 | 336 |
| VC3714 | 742 |
| VC3717 | 44 |
| VC3732 | 2 |
| VC3733 | 1,716 |
| VC3734 | 74 |
| VC3735 | 1 |
| VC3735.1 | 11 |
| VC3736 | 812 |
| VC3743 | 98 |
| VC3745 | 66 |
| VCOther | 360 |

| Figure #17 |
|---|

| TYPES OF PURSUIT-RELATED CRIMES CODE OFFENSES | |
| --- | --- |
| CC2701 | 22 |
| CC2702 | 75 |
| CC2705 | 353 |
| CC3304 | 27 |
| CC5104 | 165 |
| CC5503 | 46 |
| CCOther | 157 |

| Figure #18 |
| --- |

# APPENDIX B

# FIVE-YEAR TREND ANALYSIS



Graph #1



| Graph #2 |
| :---: |



Graph #3



Graph #4



Graph #5

# APPENDIX C

# CROSS-TABULATION ANALYSIS

## APPREHENSION – TYPE OF VEHICLE PURSUED

| | AUTO | MC | OTHER | VAN/PU/SUV | TT/ST |
|---|---|---|---|---|---|
| Delayed | 131 | 43 | 8 | 57 | 0 |
| During | 697 | 110 | 37 | 334 | 3 |
| Escaped on Foot | 74 | 5 | 1 | 39 | 0 |
| Eluded | 309 | 106 | 24 | 120 | 0 |
| Terminated | 338 | 115 | 20 | 147 | 0 |
| Totals | 1,549 | 379 | 90 | 697 | 3 |

Figure #19

| CRASH – TYPE OF VEHICLE PURSUED | | | | |
|---|---|---|---|---|
| | AUTO | MC | OTHER | VAN/PU/SUV | TT/ST |
| None | 1,056 | 326 | 74 | 482 | 3 |
| Crashes | 493 | 53 | 16 | 215 | 0 |
| Totals | 1,549 | 379 | 90 | 697 | 3 |

| Figure #20 |
|---|

**REASON TERMINATED – TYPE OF VEHICLE PURSUED**

| | AUTO | MC | OTHER | VAN-PU-SUV | TT/ST |
|---|---|---|---|---|---|
| Abandoned | 77 | 15 | 6 | 36 | 0 |
| Stopped by Collision | 237 | 33 | 6 | 95 | 0 |
| Discontinued | 667 | 250 | 47 | 268 | 0 |
| Induced Stop | 112 | 8 | 0 | 52 | 1 |
| Police Vehicle Disabled | 8 | 0 | 0 | 6 | 0 |
| Violator Vehicle Disabled | 128 | 20 | 8 | 74 | 0 |
| Stopped Voluntarily | 316 | 51 | 21 | 164 | 2 |
| Police Crash | 4 | 2 | 2 | 2 | 0 |
| Totals | 1,549 | 379 | 90 | 697 | 3 |

Figure #21

| REASON INITIATED – APPREHENSION | | | | |
|---|---|---|---|---|
| | Delayed | During | Escaped | Eluded | Terminated |
| DUI or Suspected DUI Operator | 25 | 200 | 10 | 36 | 39 |
| Felony Criminal Offenses | 33 | 168 | 13 | 55 | 73 |
| Misdemeanor Criminal Offenses | 18 | 75 | 4 | 37 | 52 |
| Other Traffic Offenses | 125 | 564 | 66 | 343 | 364 |
| Stolen or Suspected Stolen Vehicle | 24 | 115 | 21 | 56 | 66 |
| Summary Criminal Offenses | 14 | 59 | 5 | 32 | 26 |
| Totals | 239 | 1,181 | 119 | 559 | 620 |

| Figure #22 |
|---|

| REASON INITIATED – CRASH | | | |
|---|---|---|---|
| | Initiated | Crash* | % |
| DUI or Suspected DUI Operator | 310 | 109 | 35.16% |
| Felony Criminal Offenses | 342 | 128 | 37.43% |
| Misdemeanor Criminal Offenses | 186 | 44 | 23.66% |
| Other Traffic Offenses | 1,462 | 346 | 23.67% |
| Stolen or Suspected Stolen Vehicle | 282 | 118 | 41.84% |
| Summary Criminal Offenses | 136 | 32 | 23.53% |
| Totals | 2,718 | 777 | 28.59% |

| Figure #23 |
|---|

* Indicates number of pursuits where one or more crashes occurred
(multiple crashes may occur during a single pursuit).

## REASON INITIATED – REASON TERMINATED

| REASON INITIATED | ABAN | CRASH | DISC | INDUC | PDIS | POLC | VDIS | VOL |
|---|---|---|---|---|---|---|---|---|
| DUI or Suspected DUI Operator | 9 | 48 | 80 | 41 | 2 | 3 | 27 | 100 |
| Felony Criminal Offenses | 26 | 60 | 131 | 31 | 1 | 1 | 34 | 58 |
| Misdemeanor Criminal Offenses | 8 | 19 | 93 | 7 | 0 | 0 | 16 | 43 |
| Other Traffic Offenses | 62 | 163 | 746 | 73 | 8 | 6 | 104 | 300 |
| Stolen or Suspected Stolen Vehicle | 20 | 67 | 123 | 13 | 2 | 0 | 35 | 22 |
| Summary Criminal Offenses | 9 | 14 | 59 | 8 | 1 | 0 | 14 | 31 |
| Totals: | 134 | 371 | 1,232 | 173 | 14 | 10 | 230 | 554 |

Figure #24*

* Legend

ABAN = Abandoned
DISC = Discontinued
INDUC = Induced
PDIS = Police Vehicle Disabled
POLC = Police Crash
VDIS = Violator Vehicle Disabled
VOL = Voluntary Stop

# APPENDIX D

# NON-COMPLIANT LAW ENFORCEMENT AGENCIES

**APPENDIX D**
**NON-COMPLIANT LAW ENFORCEMENT AGENCIES**

The following Pennsylvania law enforcement agencies have not notified or certified to the Municipal Police Officers' Education and Training Commission that they have a pursuit policy as required by law:

| AGENCY | COUNTY |
|---|---|
| East Washington Borough Police Department | Washington |
| Elk County Detectives | Elk |
| Jefferson County Detectives | Jefferson |
| Mount Pleasant Borough Police Department | Westmoreland |
| North Sewickley Township Police Department | Beaver |
| Penn Borough Police Department | Westmoreland |
| Reynoldsville Borough Police Department | Jefferson |
| Tioga Borough Police Department | Tioga |
| West Leechburg Borough Police Department | Westmoreland |

# APPENDIX E

# DEFINITIONS

**APPENDIX E**
**DEFINITIONS**

The following terms and phrases are utilized in the Pennsylvania Police Pursuit Annual Report. For the purpose of this report, these terms and phrases have the following meanings:

1. **REASON INITIATED:** Offense or suspected offense for which the officer initially decided to pursue the vehicle.

   A. **DUI OR SUSPECTED DUI:** The driver was known to be or suspected of driving under the influence of alcohol or controlled substance.

   B. **OTHER TRAFFIC:** Any other traffic violation except driving under the influence of alcohol or controlled substance.

   C. **SUMMARY CRIMINAL:** Any known or suspected summary criminal offense.

   D. **MISDEMEANOR CRIMINAL:** Any known or suspected misdemeanor criminal offense.

   E. **FELONY CRIMINAL:** Any known or suspected felony criminal offense, except those relating to known or suspected stolen vehicles.

   F. **STOLEN OR SUSPECTED:** The vehicle is known to be or suspected of being stolen.

2. **TYPE OF VEHICLE PURSUED:**

   A. **AUTOMOBILE:** Passenger cars and minivans, regardless of the manner in which they are registered.

   B. **VAN/PICK-UP/SUV:** Full-size vans, all pick-up trucks, and sport-utility vehicles (even though they may be registered as station wagons).

   C. **MOTORCYCLE:** All two-wheeled motorcycles, mopeds, and motor-driven pedal cycles.

   D. **OTHER:** All other vehicles.

E.   **TT OR TT/STLR:** Tractor Trailer, Tractor Semi-Trailer, or any other type of commercially registered vehicles.

3.   **APPREHENSION:**

A.   **NONE – VIOLATOR SUCCESSFULLY ELUDED POLICE:** Self-explanatory.

B.   **NONE – DECISION MADE TO TERMINATE:** The pursuit was terminated due to a decision made by the pursuing officer(s) or by their supervisor(s), even though the officer(s) was able to continue the pursuit.

C.   **NONE – STOPPED BUT ESCAPED ON FOOT:** The violator vehicle was stopped, but the violator escaped on foot.

D.   **APPREHENDED DURING PURSUIT:** The violator was apprehended during the pursuit. This includes during any foot pursuit or search.

E.   **DELAYED – AFTER TERMINATION OF PURSUIT:** The violator was apprehended after the pursuit was terminated. This includes cases in which the violator was identified through investigation, or the violator was identified during the pursuit and a decision was made to terminate the pursuit. The violator is then apprehended at a later time.

4.   **REASON TERMINATED:**

A.   **PURSUIT DISCONTINUED:** Self-explanatory.

B.   **POLICE CRASH:** The pursuit was terminated because the pursuing police vehicle was involved in a crash.

C.   **POLICE VEHICLE DISABLED:** The pursuit was terminated because the pursuing police vehicle suffered a mechanical failure other than that caused by a crash.

D.   **VIOLATOR STOPPED VOLUNTARILY:** The violator stopped voluntarily, without the use of road spikes, roadblocks, induced stops, or other apprehension techniques, and surrendered.

E.   **VIOLATOR ABANDONED VEHICLE:** The violator stopped voluntarily, then fled on foot.

F.   **VIOLATOR STOPPED – CRASH:** The violator was involved in a crash which ended the pursuit.

G.   **VIOLATOR VEHICLE DISABLED:** The pursuit was terminated because the violator vehicle suffered mechanical failure other than that caused by a crash, or other police action.

H.   **STOPPED BY OTHER POLICE ACTION:** The violator was stopped by apprehension techniques other than trailing pursuit (e.g., legal intervention, roadblock, tire deflation device).

5.   **CRASH TYPE:**

A.   **NO CRASH:** Self-explanatory.

B.   **VIOLATOR CRASH:** A crash involving only the violator vehicle.

C.   **POLICE CRASH:** A crash involving only a pursuing police vehicle(s).

D.   **UNINVOLVED CRASH:** A crash involving only a vehicle(s) not involved in the pursuit.

E.   **VIOLATOR – POLICE CRASH:** A crash involving the violator and pursuing police vehicle(s).

F.   **VIOLATOR – UNINVOLVED CRASH:** A crash involving the violator vehicle and an occupied vehicle(s) not involved in the pursuit.

G.   **UNINVOLVED – POLICE CRASH:** A crash involving an occupied vehicle(s) not involved in the pursuit and a pursuing police vehicle(s).

H.   **VIOLATOR – POLICE DEL. INT. (Deliberate Intent):** Violator vehicle was deliberately driven into a police vehicle.

I. **VIOLATOR – UNINVOLVED DEL. INT. (Deliberate Intent):** Violator vehicle was deliberately driven into an uninvolved vehicle.

J. **POLICE – VIOLATOR LEGAL INT. (Legal Intervention):** Police vehicle was deliberately driven into the violator vehicle as an act of legal intervention.

6. **APPREHENSION TECHNIQUES:**

A. **TRAILING PURSUIT:** Following a violator vehicle in an attempt to stop it.

B. **ROAD SPIKES/TIRE DEFLATION DEVICE:** Road fangs, spike strips, stop sticks, or other devices used to deflate the tires of a pursued vehicle.

C. **PARTIAL ROADBLOCK:** A roadblock intended to stop or slow the pursued vehicle while allowing the vehicle to pass through or around the roadblock.

D. **TOTAL ROADBLOCK:** A roadblock which completely blocks the pursued vehicle's path, preventing the vehicle from passing through or around the roadblock without striking the roadblock.

E. **ROLLING ROADBLOCK:** One or more police vehicles being driven in front of, and in the same direction as, the pursued vehicle. The police vehicles are then slowed to force the pursued vehicle to stop.

F. **OTHER INDUCED STOP:** One or more police vehicles being used to force the pursued vehicle to stop. For the purpose of this report, in an induced stop, there is no attempt to make contact with the pursued vehicle.

G. **LEGAL INTERVENTION:** For the purpose of this report, deliberately driving a police vehicle into the violator vehicle in an attempt to stop the vehicle.

H. **FIREARMS:** Firearms or long guns discharged at the pursued vehicle or driver.

I. **AIR SUPPORT:** Assistance in pursuit is provided by any type of aircraft.

7. **NONPURSUIT-RELATED CHARGES:** Charges filed against the operator and/or occupants of the pursued vehicle which are not a result of their conduct during the pursuit.

8. **CC:** Pennsylvania Crimes Code (Title 18).

9. **CS:** The Controlled Substance, Drug, Device and Cosmetic Act (Act 64).

10. **FW:** Fireworks Law.

11. **GM:** Game Law.

12. **LL:** Liquor Law.

13. **VC:** Pennsylvania Vehicle Code (Title 75).

14. **PURSUIT-RELATED CHARGES:** Charges relating to the violator's operation of the pursued vehicle during the pursuit.

15. **OTHER PURSUIT-RELATED CHARGES:** Additional charges relating to the violator's operation of the pursued vehicle during the pursuit.

16. **HIGHWAY:** Type of highway or roadway on which the pursuit started, traveled on during the pursuit, and on which the pursuit ended.

17. **MARKED VEHICLES DIRECTLY INVOLVED:** The total number of marked police vehicles directly involved in the pursuit.

18. **UNMARKED VEHICLES DIRECTLY INVOLVED:** The total number of unmarked police vehicles directly involved in the pursuit.

19. **INJURIES:**

   A. **VIOLATOR:** Total number of persons in the violator vehicle who received nonfatal injuries resulting from vehicular operation during the pursuit.

   B. **POLICE:** Total number of persons in police vehicle(s) who received nonfatal injuries resulting from vehicular operation during the pursuit.

C. **UNINVOLVED:** Total number of uninvolved persons who received nonfatal injuries resulting from vehicular operation during the pursuit.

20. **FATALITY:**

A. **VIOLATOR:** Total number of persons in the violator vehicle who died as a direct result of vehicular operation during the pursuit.

B. **POLICE:** Total number of persons in the police vehicle(s) who died as a direct result of vehicular operation during the pursuit.

C. **UNINVOLVED:** Total number of uninvolved persons who died as a direct result of vehicular operation during the pursuit.

21. **PROPERTY DAMAGE:** Estimated dollar value of property damage, in hundreds, to violator vehicle(s), police vehicle(s), and uninvolved property resulting from the pursuit.

22. **PERSONS IN PURSUED VEHICLE ARRESTED:** Self-explanatory.

## 23.   RELATED CRIMES CODE VIOLATIONS:

**CC09: Inchoate Crime**
- 0901   Criminal Attempt
- 0903   Criminal Conspiracy
- 0907   Possessing Instruments of Crime
- 0908   Prohibited Offensive Weapons

**CC25: Criminal Homicide**
- 2501   Criminal Homicide
- 2502   Murder
- 2504   Involuntary Manslaughter

**CC27: Assault**
- 2701   Simple Assault
- 2702   Aggravated Assault
- 2705   Recklessly Endangering Another Person
- 2706   Terroristic Threats
- 2709   Harassment and Stalking

**CC29: Kidnapping**
- 2901   Kidnapping
- 2902   Unlawful Restraint

**CC33: Arson, Criminal Mischief and Other Property Destruction**
- 3302   Causing or Risking Catastrophe
- 3303   Failure to Prevent Catastrophe
- 3304   Criminal Mischief
- 3309   Agricultural Vandalism

**CC35: Burglary and Other Criminal Intrusion**
- 3502   Burglary
- 3503   Criminal Trespass

**CC37: Robbery**
- 3701   Robbery
- 3702   Robbery of Motor Vehicle

**CC39: Theft and Related Offenses**
- 3921   Theft by Unlawful Taking or Disposition
- 3925   Receiving Stolen Property
- 3926   Theft of Services
- 3928   Unauthorized Use of Automobiles and Other Vehicles
- 3929   Retail Theft

**CC41: Forgery and Fraudulent Practices**
- 4101   Forgery
- 4105   Bad Checks

**CC43: Offenses against the Family**
- 4303   Concealing Death of Child
- 4304   Endangering Welfare of Children

**CC49: Falsification and Intimidation**
- 4904   Unsworn Falsification to Authorities
- 4906   False Reports to Law Enforcement Authorities

**CC51: Obstructing Governmental Operations**
- 5104   Resisting Arrest or Other Law Enforcement
- 5105   Hindering Apprehension or Prosecution
- 5121   Escape
- 5126   Flight to Avoid Apprehension, Trial or Punishment

**CC55: Riot, Disorderly Conduct and Related Offenses**
- 5503   Disorderly Conduct
- 5505   Public Drunkenness and Similar Misconduct

**CC61: Firearms and Other Dangerous Articles**
- 6103   Crimes Committed with Firearms
- 6106   Firearms not to be Carried Without a License

**CC63: Minors**
- 6308   Purchase, Consumption, Possession or Transportation of Liquor or Malt or Brewed Beverages

## 24.   CONTROLLED SUBSTANCE VIOLATIONS:

**CS13 (a): Prohibited Acts; Penalties**

| | |
|---|---|
| 13(a)16 | Possession of a Controlled Substance |
| 13(a)30 | Possession with Intent to Deliver or Manufacture of a Controlled Substance |
| 13(a)31 | Possession of a Small Amount of Marijuana |
| 13(a)32 | Possession of Paraphernalia |

## 25.   VEHICLE CODE VIOLATIONS:

**VC13: Registration of Vehicles**

| | |
|---|---|
| 1301 | Registration and Certificate of Title Required |
| 1311 | Registration Card to be Signed and Exhibited on Demand |
| 1332 | Display of Registration Plate |
| 1371 | Operation Following Suspension of Registration |
| 1372 | Unauthorized Transfer or Use of Registration |

**VC15: Licensing of Drivers**

| | |
|---|---|
| 1501 | Drivers Required to be Licensed |
| 1503 | Persons Ineligible for Licensing; License Issuance to Minors; Junior Driver's License |
| 1504 | Classes of Licenses |
| 1505 | Learners' Permits |
| 1511 | Carrying and Exhibiting Driver's License on Demand |
| 1543 | Driving While Operating Privilege is Suspended or Revoked |
| 1575 | Permitting Violation of Title |

**VC17: Financial Responsibility**

| | |
|---|---|
| 1786 | Required Financial Responsibility |

**VC31: Obedience to and Effect of Traffic Laws**

| | |
|---|---|
| 3102 | Obedience to Authorized Persons Directing Traffic |
| 3111 | Obedience to Traffic-Control Devices |
| 3112 | Traffic-Control Signals |
| 3114 | Flashing Signals |

**VC33: Rules of the Road in General**

| | |
|---|---|
| 3301 | Driving on Right Side of Roadway |
| 3302 | Meeting Vehicle Proceeding in Opposite Direction |
| 3303 | Overtaking Vehicle on the Left |
| 3304 | Overtaking Vehicle on the Right |
| 3305 | Limitations on Overtaking on the Left |
| 3306 | Limitations on Driving on Left Side of Roadway |
| 3307 | No-Passing Zones |
| 3308 | One-Way Roadways and Rotary Traffic Islands |
| 3309 | Driving on Roadways Laned for Traffic |
| 3310 | Following Too Closely |
| 3311 | Driving on Divided Highways |
| 3312 | Limited Access Highway Entrances and Exits |
| 3322 | Vehicle Turning Left |
| 3323 | Stop Signs and Yield Signs |
| 3324 | Vehicle Entering or Crossing Roadway |
| 3325 | Duty of Driver on Approach of Emergency Vehicle |
| 3331 | Required Position and Method of Turning |
| 3334 | Turning Movements and Required Signals |
| 3361 | Driving Vehicle at Safe Speed |
| 3362 | Maximum Speed Limits |
| 3367 | Racing on Highways |

**VC35: Special Vehicles and Pedestrians**

| | |
|---|---|
| 3523 | Operating Motorcycles on Roadways Laned for Traffic |
| 3525 | Protective Equipment for Motorcycle Riders |
| 3546 | Driving Through or Around Safety Zone |

**VC37: Miscellaneous Provisions**

| | |
|---|---|
| 3701 | Unattended Motor Vehicle |
| 3702 | Limitations on Backing |
| 3703 | Driving Upon Sidewalk |
| 3714 | Careless Driving |
| 3717 | Trespass by Motor Vehicle |
| 3732 | Homicide by Vehicle |
| 3733 | Fleeing or Attempting to Elude Police Officer |
| 3734 | Driving without Lights to Avoid Identification or Arrest |
| 3735 | Homicide by Vehicle While DUI |
| 3735.1 | Aggravated Assault by Vehicle While DUI |
| 3736 | Reckless Driving |
| 3743 | Accidents Involving Damage to Attended Vehicle or Property |
| 3745 | Accidents Involving Damage to Unattended Vehicle or Property |

**VC38: Driving after Imbibing Alcohol or Utilizing Drugs**

| | |
|---|---|
| 3802 | Driving Under Influence of Alcohol or Controlled Substance |

**VC41: Equipment Standards**

| | |
|---|---|
| 4107 | Unlawful Activities |

**VC47: Inspection of Vehicles**

| | |
|---|---|
| 4703 | Operation of Vehicle Without Official Certificate of Inspection |
| 4730 | Violations of Use of Certificate of Inspection |

**VC71: Vehicle Theft and Related Provisions**

| | |
|---|---|
| 7122 | Altered, Forged or Counterfeit Documents and Plates |
| 7124 | Fraudulent Use or Removal of Registration Plate |

**VC77: Snowmobiles and All-Terrain Vehicles**

| | |
|---|---|
| 7721 | Operation on Streets and Highways |

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

### Civil Division

NILDA ROQUE and EVELYN HERNANDEZ,
as Co-Administratrixes  of the Estate of LUIS
HERNANDEZ, Deceased and NILDA ROQUE
and EVELYN HERNANDEZ on behalf of all
Wrongful   Death   Beneficiaries   of   LUIS         No.:
HERNANDEZ, Deceased;

        Plaintiffs,

   vs.

MUNICIPALITY    OF    MONROEVILLE,
MONROEVILLE   POLICE   DEPARTMENT,
CHIEF   KENNETH   D.   COLE,   CORPORAL
CHAD   HOFFNER,   SERGEANT     JAMES
MACDONALD, OFFICER BRIAN FRANK and
OFFICER KEVIN PERSICHETTI,

        Defendants.

## VERIFICATION

I verify that the averments of fact made in the foregoing COMPLAINT are true and correct and based on my personal knowledge, information or belief. I understand that averments of fact in said document are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsifications to authorities.

08/21/2024
------------
Dated

EVELYN HERNANDEZ

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

## Civil Division

NILDA ROQUE and EVELYN HERNANDEZ,
as Co-Administratrixes  of the Estate of LUIS
HERNANDEZ, Deceased and NILDA ROQUE
and EVELYN HERNANDEZ on behalf of all
Wrongful   Death   Beneficiaries   of   LUIS
HERNANDEZ, Deceased;

        No.:

       Plaintiffs,

  vs.

MUNICIPALITY   OF   MONROEVILLE,
MONROEVILLE   POLICE   DEPARTMENT,
CHIEF  KENNETH  D.  COLE,  CORPORAL
CHAD  HOFFNER,  SERGEANT   JAMES
MACDONALD, OFFICER BRIAN FRANK and
OFFICER KEVIN PERSICHETTI,

       Defendants.

## VERIFICATION

    I verify that the averments of fact made in the foregoing COMPLAINT are true and correct

and based on my personal knowledge, information or belief. I understand that averments of fact in

said document are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn

falsifications to authorities.

08/21/2024
_____
Dated

_____
NILDA ROQUE